UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY H. MARQUEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | No.  2:19-cv-778-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 14, 17) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Title II disability insurance benefits and Title XVI supplemental benefits.[1]  In her summary judgment motion, plaintiff primarily contends the Administrative Law Judge ("ALJ") erred in assessing her mental limitations and failed to fully develop the record. The Commissioner opposed and filed a cross–motion for summary judgment.

The Court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's motion, and AFFIRMS the final decision of the Commissioner.

///

///

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and the parties consented to the jurisdiction of the undersigned for all purposes.  (See ECF Nos. 4, 5.)

1

I.      **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

Plaintiff applied for benefits on December 9, 2014, alleging an onset date of September 13, 2014. (Administrative Transcript ("AT") 295.) Plaintiff claimed the following medical conditions: "Back injury, Pancreatic cancer/vascular tumor, Thyroid problems/past cancer, depression, anxiety, removal of spleen and most of pancreas, Stomach problems." (AT 618.) Plaintiff's application was denied initially and again upon reconsideration. (AT 644-45, 676-77.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 684, 699.)

At a July 18, 2017 hearing, plaintiff testified about her conditions, and the ALJ heard testimony from a vocational expert regarding plaintiff's ability to work. (AT 563-617.) Prior to the testimony, the ALJ asked plaintiff's counsel if the record was complete, and counsel replied that it was. (AT 565.) However, throughout the hearing, the ALJ noted that certain information testified to by plaintiff was not reflected in the file—including files on a CD that was in plaintiff's possession at the hearing but not printed out. (See AT 567, 571, 575, 577, 592, 594-98.) At the end, the ALJ admitted a number of late-filed records, ordered plaintiff to update the record, ordered two more consultative exams, and called for a supplemental hearing. (AT 612-16.) Plaintiff participated in the exams, but did not submit any additional records to the ALJ.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:
> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Almost four months later, on November 14, 2017, the ALJ issued a decision determining that plaintiff was not disabled for the relevant period. (AT 295-307.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since September 3, 2014. (AT 298.) At step two, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine; rhabdomyolysis, obesity, and hypertension." (Id.) The ALJ found plaintiff's mental impairments, including depression, anxiety, a personality disorder, a dysthymic disorder, polysubstance abuse, borderline intellectual functioning, a pain disorder, and a mood disorder, did not cause "more than minimal limitation in the claimants ability to perform basic mental work activities and are therefore nonsevere." (Id.) At step three, The ALJ determined the severe impairments did not meet or medically equal a listed impairment. (AT 300).

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform "sedentary work," with the "ability to lift and carry 10 pounds occasionally and 10 pounds frequently; to stand and walk for 4 hours in an 8-hour workday; and to sit for 8 hours in an 8-hour work day[, and] is never able to kneel, crouch or crawl; and should avoid concentrated exposure to hazards." (AT 301.) In reaching this conclusion, the ALJ stated he considered plaintiff's expressed symptoms, the objective medical evidence in the record, and the opinion evidence of record. (Id.) The ALJ found the severity of plaintiff's expressed symptoms to be inconsistent with the medical and other evidence in the record. (AT 305.) Ultimately, the ALJ concluded at steps four and five that while plaintiff was incapable of performing past work, there were a significant number of jobs in the national economy that plaintiff could perform. (AT 305-06.)

Plaintiff appealed to the Appeals Council, and submitted additional medical records. (See AT 2.) On March 15, 2018, the Council denied Plaintiff's appeal. (AT 1-7.) The Council found that those additional records pertaining to plaintiff's health from after the hearing were irrelevant, and those filed before did "not show a reasonable probability that it would change the outcome of the decision." (AT 2.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross–motions for summary judgment. (ECF Nos. 1, 17, 20.)

## II. **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

## III. **ISSUES PRESENTED**

Plaintiff alleges two errors on the ALJ's part. First, plaintiff contends the ALJ erred in finding her mental limitations non-severe at step 2, as she argues the ALJ should have included plaintiff's borderline intellectual functioning as a severe condition. Concurrent with this assertion, plaintiff contends Dr. Regazzi's exam notes reveal multiple mental impairments, and the ALJ only summarized the Dr.'s findings without discussing plaintiff's borderline intellectual functioning. Second, plaintiff contends the ALJ failed to develop the record "fully and fairly" when he issued a decision without the aid of the missing records or a supplemental hearing. Plaintiff requests a remand for further proceedings. (ECF No. 14.)

The Commissioner counters each of plaintiff's arguments and maintains the ALJ's opinion should be affirmed. First, the Commissioner contends the ALJ properly analyzed plaintiff's alleged mental impairments at step two using the paragraph B criteria, which led to a finding of, at best, mild impairments. The Commissioner argues the ALJ properly analyzed Dr. Regazzi's exam and opinion, and therefore did not err in crafting plaintiff's RFC. Second, the Commissioner contends that because plaintiff did not submit any records in the four months after the hearing, the prior record and two new consultative examinations were all the ALJ needed to finalize the decision. (ECF No. 17.)

## IV. DISCUSSION

### A. The ALJ did not commit reversible error in failing to find plaintiff's borderline intellectual functioning to be severe at step two, nor in formulating plaintiff's RFC.

Under step two, the ALJ is to classify any impairments as either "severe" or "non-severe." See 20 C.F.R. §§ 404.1520, 1571-76. A "severe" impairment is one that significantly limits the physical or mental ability to perform basic work activities. § 404.1520(c). This assessment is a "de minimus screening to dispose of groundless claims." Edlund, 253 F.3d at 1158.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F.3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff argues that the ALJ's determination of plaintiff's medically-determinable mental impairments, including her borderline intellectual functioning, as non-severe was error, given the results of Dr. Regazzi's August 2017 examination. Plaintiff relies on Webb v. Barnhart for the proposition that the ALJ's conclusion must be "clearly established by medical evidence." 433 F.3d 683 (9th Cir. 2005). Further, plaintiff argues even if these impairments were properly deemed non-severe, the ALJ should have taken them into account when formulating the RFC.

However, as the court in Webb noted, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more

than a minimal effect on an individual's ability to work.'"  Id. at 686 (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).  At the start of the step two analysis, the ALJ first listed all of plaintiff's medically-determinable mental impairments, which included "depression, anxiety, a personality disorder, a dysthymic disorder, polysubstance abuse, borderline intellectual functioning, a pain disorder, and a mood disorder."  (AT 298.)  The ALJ found these conditions, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  (Id.)  The ALJ worked through the "paragraph B" criteria (see 20 C.F.R., Part 404, Subpart P, Appendix 1), and found her impairments to be either mild or insignificant.  (AT 298-99.)  These findings are based on the medical evidence in the record, including two mental exams performed prior to plaintiff's filing of her claim, the consultative reports of the two state agency physicians who reviewed plaintiff's case at the initial and reconsideration stages, and the post-hearing psychological exam by Dr. Regazzi in August 2017.  (Id.)  Plaintiff argues this analysis ignores Dr. Regazzi's assessment of some other moderate limitations, including for her "ability to perform work activities without special or additional supervision," her "ability to complete a normal workday or workweek without interruptions resulting from [her] psychiatric condition" and her "low average verbal intelligence" and "borderline nonverbal intelligence."  (AT 299.)  However, the ALJ appropriately dealt with these more-restrictive findings from Dr. Regazzi in the very next paragraph.  (AT 300.)  There, the ALJ gave less weight to the moderate limitations because they were inconsistent with Dr. Regazzi's own notes, plaintiff's activities of daily living, and the opinions of the other physicians—which the ALJ detailed in the paragraphs preceding the discussion of Dr. Regazzi's examination.  (Id.)

The undersigned finds no error in the ALJ's assignment of plaintiff's mental conditions at step two.  The decision sufficiently shows that Dr. Regazzi's more-restrictive findings were at odds with the other medical evidence in the record.  Confronted with these inconsistencies, the ALJ set forth specific and legitimate reasons for discounting Dr. Regazzi's moderate findings.  Lester, 81 F. 3d at 831 (to evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in

the record; and (2) clinical findings support the opinions). Thus, contrary to plaintiff's argument, the ALJ's discussion of Dr. Regazzi's exam was not a mere summary, but a sufficiently-detailed explanation of why the doctor's moderate restrictions were given less weight.

After rejecting Dr. Regazzi's findings, the ALJ's appropriately relied on the remaining medical evidence in finding any mental impairments at step two to be non-severe. Further, the ALJ was not required to discuss Dr. Regazzi's moderate limitations in the RFC portion of the decision (see AT 301-05), as they had already been rejected at step two. Requiring the ALJ to repeat the findings on Dr. Regazzi's exam in the RFC section would be unnecessary formalism. For these reasons, the court finds the ALJ did not fail in assessing plaintiff's mental impairments, either at step two or during the RFC formulation.

**B. The ALJ did not fail in his duty to develop the record.**

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Id.; see Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150.

Here, plaintiff argues that because the ALJ explicitly recognized at the hearing that there were gaps in the record (see AT 567, 571, 575, 577, 592, 594-98), and explicitly informed plaintiff he would leave the record open and schedule a supplemental hearing, it was error for the ALJ to release the decision prior to receiving the updated records and holding this second hearing. The court takes issue with multiple portions of plaintiff's argument.

First, plaintiff is correct that the ALJ indicated he would leave the record open for her to submit the latest records. However, it appears four months passed without word from plaintiff or

her counsel, and the court wonders how much longer plaintiff would want the ALJ to have waited.  In fact, it appears plaintiff may have had some of these exhibits on a disc with her at the hearing, and it is unclear if those exhibits were ever submitted.  As plaintiff is aware, the burden falls to her to demonstrate her disability at the first four steps, and the fault for the ALJ's inability to consider the information therein falls on her and not the ALJ.  See Bowen, 482 U.S. at 146 n.5 ("The claimant bears the burden of proof in the first four steps of the sequential evaluation process.").  The ALJ's decision to keep the record open for four months was a reasonable amount of time to wait, and absent any submissions, the ALJ was within his right to rely on the evidence submitted.  A review of other persuasive cases supports this conclusion.  See Kaur v. Saul, 2019 WL 4013601, *6 (E.D. Cal. August 26, 2019) (Claire, M.J.) (finding that the ALJ discharged his duty to supplement the record by holding the case open for four months before issuing a decision); Caijigal v. Berryhill, 2018 WL 3000543, *4 (D. Hi. June 15, 2018) (ALJ's announcement that he would leave the record open for an additional medical report, and would release a decision in three or four months, was sufficient to discharge his duty); Williams v. Colvin, 2015 WL 5227736, *3 (N.D. Ill. September 4, 2015) (finding a three-and-a-half month delay in leaving the record open to be reasonable); Shepherd v. Astrue, 2010 WL 883012, *1 (D. Or. March 9, 2010) ("As it was, the ALT waited almost three months to issue a decision, without receiving any documentation from Ms. Shepherd . . . The record clearly demonstrates that [plaintiff] was given every opportunity to submit additional medical records, yet failed to do so[,] and that Ms. Shepherd has not shown good cause for that failure.").

Second, the ALJ did not stand idly by waiting for plaintiff to submit the missing records.  Instead, it appears he ordered multiple consultative exams in order to clear up the ambiguity in the record.  See 20 C.F.R. § 404.1519a ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination.")  Plaintiff participated in these exams, and the ALJ relied upon them in resolving the ambiguities in the record—up through and including the RFC formulation stage.  Tonapetyan, 242 F.3d at 1150; see also Rodriguez v. Astrue, 2012 WL 5990125, at *5 (C.D. Cal. Nov. 30, 2012) (finding no error in record supplementation where, after discovering an ambiguity, the ALJ "ordered two consultative

examinations and kept the record open for 30 days to allow Rodriguez to submit additional evidence.") (citing Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001) ("One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination.").

Third and finally, plaintiff appears to argue the ALJ should have considered the evidence she eventually obtained, but does not specifically argue how this is so. However, she did in fact submit this evidence to the Appeals Council alongside her appeal. (See AT 2.) The Council determined that this evidence would not have changed the final determination of non-disability, and plaintiff does not appear to argue otherwise. Buck, 869 F.3d at 1048 (a court should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard.").

For these reasons, the undersigned finds the ALJ did not err in his duty to supplement the record. Finding no further error, the decision is affirmed.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 17) is GRANTED;
2. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;
3. This decision of the Commissioner is AFFIRMED; and
4. The Clerk is directed to enter judgment for the Commissioner and CLOSE the case.

Dated: June 25, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

hoff.1609